LOCKWOOD v MOBILE MEDICAL RESPONSE, INC

Docket No. 295931. Submitted April 5, 2011, at Lansing. Decided June 7, 2011, at 9:00 a.m.

Kurt A. Lockwood, as personal representative of the estate of Jerri Lockwood, deceased, brought an action in the Saginaw Circuit Court against Mobile Medical Response, Inc., alleging that the defendant was negligent by failing to respond in a timely manner with its ambulance, containing a paramedic and an emergency medical technician, after a call was made to a 911 operator to seek help when the decedent became sick and began having difficulty breathing. Defendant moved for summary disposition on the basis that plaintiff's complaint alleged medical malpractice and plaintiff had failed to meet the procedural requirements to sustain a medical-malpractice action. Plaintiff responded that his claim did not sound in medical malpractice, because he did not question the quality of the medical care provided by defendant but instead alleged ordinary negligence with regard to the reasonableness of defendant's response time. The trial court, Janet M. Boes, J., denied defendant's motion, holding that plaintiff's complaint alleged ordinary negligence and not medical malpractice. Defendant sought leave to appeal the order denying its motion. The Court of Appeals, O'CONNELL and M. J. KELLY, JJ. (BORRELLO, P.J., dissenting), granted leave to appeal in an unpublished order, entered April 28, 2010 (Docket No. 295931).

The Court of Appeals *held*:

1. A medical-malpractice claim is a claim that arises during the course of a professional relationship and involves a question of medical judgment. A claim concerns common knowledge and not a question of medical judgment if lay jurors can evaluate the reasonableness of the defendant's actions using their common knowledge and experience. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented, through expert testimony, with the standards of care pertaining to a medical issue, a medical-malpractice claim is involved.

2. The events at issue in plaintiff's complaint occurred during the course of a professional relationship. The complaint also

alleged a claim involving a question of medical judgment because, although plaintiff did not explicitly define the standard of care governing the duty to timely respond, plaintiff referred to the guidelines promulgated by the agency charged by state law with overseeing the provision of emergency medical services and alleged that defendant violated those guidelines. A lay juror would require the testimony of an expert in order to understand the guidelines and to determine whether defendant's agents acted reasonably under the circumstances. Without an expert, a lay juror would be unable to know, given the nature and the seriousness of the decedent's medical emergency, what a timely response to the 911 call would be. Therefore, the claim involved medical judgment. The issue is not just a matter regarding timing, but concerns what is timely in the context of the deceased's specific medical emergency. Plaintiff's complaint sounds in medical malpractice, not ordinary negligence.

3. Plaintiff's failure to fulfill the procedural requirements for filing a medical-malpractice claim should have resulted in dismissal of the claim with prejudice because plaintiff could not refile the claim since the period of limitations had run. The trial court erred by denying defendant's motion for summary disposition.

Reversed.

RONAYNE KRAUSE, J., dissenting, agreed with the majority that the trier of fact will require expert testimony in order to understand the judgment exercised by defendant in getting its ambulance from its assigned station to the scene of the decedent's collapse, but disagreed that expert medical testimony is required. It is well within the realm of common knowledge and experience that the time it takes to respond to a cardiac arrest is critical. No professional judgment is needed to deduce that it was incumbent on defendant to get to the decedent as quickly as possible. What is not within the realm of common knowledge and experience is whether it was actually possible for defendant's ambulance to get to the decedent faster. The professional judgment exercised by defendant's driver in determining how to get to the decedent as quickly as possible, while outside the common knowledge of jurors, was not medical in nature. A decision that might have some ultimate medical consequences does not necessarily constitute an exercise of actual medical judgment. The order denying defendant's motion for summary disposition should have been affirmed.

1. NEGLIGENCE — MEDICAL MALPRACTICE.

A medical-malpractice claim is one that arises during the course of a professional relationship and involves a question of medical judg-

ment; a medical-malpractice claim is involved if the reasonable-
ness of the defendant's action can be evaluated by a jury only after
the jury is presented, through expert testimony, with the stan-
dards of care pertaining to a medical issue; a claim concerns
common knowledge and not a question of medical judgment if lay
jurors can evaluate the reasonableness of the defendant's actions
using their common knowledge and experience.

2. NEGLIGENCE — MEDICAL MALPRACTICE — PROFESSIONAL RELATIONSHIPS.

A professional relationship exists, for purposes of a medical-
malpractice action, when a defendant licensed health-care profes-
sional, licensed health-care facility or agency, or the agents or
employees of a licensed health-care facility or agency, are subject to
a contractual duty that requires that professional, facility, or
agency, or the agents or employees of that facility or agency, to
render professional health-care services to the plaintiff (MCL
600.5838a[1]).

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by
*Matthew J. Thomas* and *Paul J. Manion*), for Mobile
Medical Response, Inc.

Before: O'CONNELL, P.J., and K. F. KELLY and RONAYNE
KRAUSE, JJ.

K. F. KELLY, J. Defendant, Mobile Medical Response,
Inc., appeals by leave granted the trial court's order
denying its motion for summary disposition. On appeal,
defendant argues that the trial court erred by failing to
grant its motion for summary disposition because plain-
tiff, Kurt Lockwood, as the personal representative of
the estate of Jerri Lockwood (the decedent), filed a
medical-malpractice complaint without following the
procedures governing medical-malpractice claims. We
agree and reverse the trial court's order.

I. BASIC FACTS AND PROCEDURE

On September 12, 2004, the decedent was playing
softball in the city of Saginaw when she became sick

and began having difficulty breathing. A call was made to a 911 operator, and defendant's ambulance was dispatched to the scene at 1:48 p.m. Defendant's ambulance, containing a paramedic and an emergency medical technician (EMT), was en route to the scene at 1:49 p.m. and arrived at the scene at 1:57 p.m. Upon arrival, the paramedic and EMT found police officers performing CPR on the decedent and discovered that the decedent was "pulseless and apneic." They used a defibrillator on the decedent, intubated her, and transported her in the ambulance to Covenant Hospital, leaving the scene at 2:13 p.m. and arriving at the hospital at 2:25 p.m. Ultimately, the decedent was never revived and she died of arteriosclerotic heart disease.

More than four years later, on August 27, 2009, plaintiff filed a complaint against defendant, alleging that defendant was negligent by failing to timely respond to the 911 call and failing to timely provide transportation for the decedent to the hospital. Plaintiff contended that the decedent died as a result of defendant's failures. Plaintiff asked the trial court to enter a judgment on his behalf.

Instead of filing an answer to plaintiff's complaint, defendant's first responsive pleading was a motion for summary disposition, filed on October 9, 2009. Defendant moved pursuant to MCR 2.116(C)(7) and (8), arguing that plaintiff's complaint should be dismissed with prejudice because plaintiff's complaint alleged medical malpractice and plaintiff failed to meet the procedural requirements to sustain a medical-malpractice action.

On November 16, 2009, plaintiff filed a response in opposition to defendant's motion for summary disposition. Plaintiff denied that his claim sounded in medical malpractice on the basis that his complaint did not

question the quality of medical care provided by defendant. Instead, the complaint merely addressed the reasonableness of defendant's response time, a question that does not involve medical care, but is analogous to questioning the reasonableness of the time it takes for a fire department to respond to a fire. Plaintiff argued that he properly pleaded an ordinary negligence claim.

A hearing was held on defendant's motion for summary disposition on December 7, 2009. Defendant argued that plaintiff's claim sounded in medical malpractice because it related to a professional relationship between the decedent and defendant and the claim concerned a matter of medical judgment. Defendant contended that its response time involved a question outside the common knowledge of the jury because the standard governing response time for EMTs was delineated in guidelines issued by the Saginaw Valley Medical Control Authority (SVMCA) and required explanation by a medical expert. In response, plaintiff posited that there was no case on point finding that a complaint regarding the transportation services of EMTs sounded in medical malpractice. Plaintiff further argued that his complaint specifically excluded any references to medical judgment. According to plaintiff, the only issue pleaded was the reasonableness of the time it took for defendant to respond to the call made to 911. The trial court denied defendant's motion for summary disposition under MCR 2.116(C)(7) and (8), holding that "plaintiff's complaint as pled sounds in ordinary negligence, and not medical malpractice." The trial court issued a written order reflecting its ruling on December 21, 2009.

Defendant filed an application for leave to appeal the trial court's decision on January 8, 2010. This Court, O'CONNELL and M. J. KELLY, JJ. (BORRELLO, P.J., dissent-

ing), granted defendant's application for leave to appeal on April 28, 2010. *Lockwood v Mobile Med Response, Inc,* unpublished order of the Court of Appeals, entered April 28, 2010 (Docket No. 295931).

## II. MEDICAL MALPRACTICE

Defendant argues that the trial court erred by denying its motion for summary disposition after holding that plaintiff's complaint sounded in ordinary negligence and not medical malpractice and by failing to dismiss plaintiff's complaint with prejudice on the basis that plaintiff did not comply with the procedural requirements for a medical-malpractice claim and the period of limitations had run. We agree.

### A. STANDARD OF REVIEW

A motion for summary disposition is reviewed de novo, and the evidence with regard to each issue is viewed in the light most favorable to the nonmoving party. *Robertson v Blue Water Oil Co,* 268 Mich App 588, 592; 708 NW2d 749 (2005). Under MCR 2.116(C)(7), summary disposition should be granted if the claim is barred as a matter of law, including by a relevant statute of limitations. *Vance v Henry Ford Health Sys,* 272 Mich App 426, 429; 726 NW2d 78 (2006). In reviewing a motion for summary disposition alleging that the claim is barred, we consider the affidavits, pleadings, and other documentary evidence presented by the parties and accept as true the plaintiff's well-pleaded allegations except those contradicted by documentary evidence. *Id.* at 429; *Davis v Detroit,* 269 Mich App 376, 378; 711 NW2d 462 (2006).

A motion for summary disposition based on the failure to state a claim under MCR 2.116(C)(8) tests the

legal sufficiency of the complaint on the basis of the pleadings alone. *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002). A motion should be granted under MCR 2.116(C)(8) "only if no factual development could possibly justify recovery." *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007). In reviewing the decision on the motion, we must consider only the pleadings and "accept the factual allegations in the complaint as true . . . ." *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008).

### B. MEDICAL MALPRACTICE VERSUS ORDINARY NEGLIGENCE

Defendant contends that plaintiff's claim is, by definition, a medical-malpractice claim and not an ordinary negligence claim. A medical-malpractice complainant cannot avoid the procedural requirements for a malpractice action by framing its claim in terms of ordinary negligence. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43; 594 NW2d 455 (1999). A medical-malpractice claim is defined as a claim that arises during the course of a professional relationship and involves a question of medical judgment. *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 422; 684 NW2d 864 (2004). A professional relationship exists when

> a licensed health care professional, licensed health care facility [or agency], or the agents or employees of a licensed health care facility [or agency], [are] subject to a contractual duty that require[s] that professional, that facility [or agency], or the agents or employees of that facility [or agency], to render professional health care services to the plaintiff. [*Id.*]

See MCL 600.5838a(1). A claim concerns common knowledge and not a question of medical judgment if lay jurors can evaluate the reasonableness of the defen-

dant's actions using their common knowledge and experience. *Bryant*, 471 Mich at 423. "If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented [through expert testimony with] the standards of care pertaining to the medical issue . . . , a medical malpractice claim is involved." *Id.*

The events at issue in plaintiff's complaint occurred during the course of a professional relationship. Defendant is a licensed health-care agency under the Public Health Code. MCL 333.20920; MCL 600.5838a(1)(a). The EMT and the paramedic were acting as defendant's agents when they responded to the call.[1] Additionally, the events at issue occurred at a time when defendant had a contractual obligation to provide medical services to the decedent. A 911 call was made and defendant's agents were dispatched to the scene for the purpose of providing medical services to the decedent. Accordingly, the first prong of the test for a medical-malpractice claim, that the claim arose from a professional relationship, was met.

Furthermore, the complaint alleged a claim involving a question of medical judgment. Plaintiff contended that defendant "held itself out as competent, capable and sufficiently equipped and staffed to respond when dispatched to transport qualified medical personnel to

---

[1] Defendant contends that the paramedic and the EMT that drove in the ambulance to the scene and provided medical care to the decedent were "licensed medical providers" for purposes of medical-malpractice claims. However, for purposes of the tort-reform statute, paramedics and EMTs are not "licensed health care professionals" because they are not licensed under article 15 of the Public Health Code, but are licensed instead under article 17 of the Public Health Code. MCL 600.5838a(1)(b); MCL 333.20950. Still, the paramedic and the EMT were acting as agents of a licensed health-care agency, and therefore, can still be the subjects of a malpractice claim. MCL 600.5838a(1).

an emergency medical situation." Plaintiff alleged in the complaint that defendant breached the duty to timely respond to the 911 call and that the breach resulted in the decedent's "untimely death . . . ." Although plaintiff does not explicitly define the standard of care governing the duty to timely respond, plaintiff refers to the guidelines promulgated by the SVMCA, an agency charged by state law[2] with overseeing the provision of emergency medical services in Saginaw and Tuscola counties, and indicates that defendant violated those guidelines. A lay juror would require the testimony of an expert to understand the SVMCA guidelines and to determine whether defendant's agents acted reasonably under the circumstances. Without an expert, a lay juror would be unable to know what a timely response to a 911 call would be, given the nature and the seriousness of the decedent's medical emergency.

Plaintiff argued at the hearing on the motion for summary disposition that his claim against defendant did not concern defendant's medical judgment, but only involved the response time of the ambulance. He analogized his claim to challenging the time it takes a fire department to respond to a fire. We disagree, and conclude that this claim involves medical judgment. By citing the SVMCA guidelines in the complaint, plaintiff conceded that ambulance response time is governed by a professional standard of care and not by the ordinary-person standard of care. Moreover, whether defendant was timely in arriving at a scene depends in large part on the nature of the medical emergency. Whether an ambulance arrives in a timely manner when the call concerns a broken bone is a very different question from whether an ambulance is timely when the medical emergency is a cardiac arrest. As a result, the issue in

---

[2] See MCL 333.20919.

plaintiff's complaint was not just a matter of timing, but concerns what is timely in the context of the decedent's specific medical emergency. Timeliness within the context of a medical emergency would not be easily understood and evaluated by lay jurors without expert testimony regarding the medical issue. As a result, plaintiff's complaint sounds in medical malpractice, not ordinary negligence.

### C. PROCEDURAL REQUIREMENTS

Defendant further argues that because plaintiff's complaint amounted to a medical-malpractice claim, plaintiff was required to meet the procedural requirements for filing a medical-malpractice claim, including the provision of notice and the filing of an affidavit of merit. According to defendant, plaintiff's failure to conform to those procedural constraints should have resulted in dismissal of the claim. We agree.

Generally, a medical-malpractice claimant must provide to proposed defendants notice of his or her intent to sue at least 182 days before commencing an action. MCL 600.2912b(1); *Driver v Naini*, 287 Mich App 339, 345; 788 NW2d 848 (2010). A medical-malpractice claim may not be asserted against a health professional or health facility unless written notice is provided before the action is commenced. MCL 600.2912b(1); *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 685; 684 NW2d 711 (2004). Generally, the notice will toll the applicable statute of limitations. *Id.* at 686. The sanction for the failure to give notice of intent to claim medical malpractice is dismissal of the complaint without prejudice. *Dorris*, 460 Mich at 47.

In addition to the notice of intent, a plaintiff alleging medical malpractice or the plaintiff's attorney must file with the complaint "an affidavit of merit signed by a

health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness . . . ." MCL 600.2912d(1). The affidavit of merit must certify the following:

> [T]he health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [MCL 600.2912d(1).]

"When a medical malpractice complaint is filed without an affidavit of merit, the complaint is ineffective and fails to toll the limitations period." *Vanslembrouck v Halperin*, 277 Mich App 558, 561; 747 NW2d 311 (2008). Moreover, the sanction for failing to file an affidavit of merit is dismissal without prejudice. *Dorris*, 460 Mich at 47.

Plaintiff failed to provide any notice of intent to sue defendant, failed to wait the statutory period before filing his complaint against defendant, and failed to file an affidavit of merit with his complaint. As a result, plaintiff could not assert his medical-malpractice claim and did not toll the relevant statute of limitations, and defendant was entitled to dismissal with prejudice. Generally, in cases where the statute of limitations has not run, a plaintiff who fails to file notice of intent to sue and/or an affidavit of

merit is entitled to dismissal without prejudice and is allowed to file a notice of intent to toll the statute of limitations and then refile a complaint with the attached affidavit. *Id.* However, plaintiff was unable to refile his complaint because the applicable period of limitations had run. Generally, the period of limitations for a medical-malpractice claim is two years. MCL 600.5805(6). Still, the period can be extended for the personal representative of a decedent. MCL 600.5852. A personal representative of a decedent must file a medical-malpractice claim within two years of receiving his or her letters of authority, but not more than three years after the original period of limitations has run. MCL 600.5852. The original period of limitations ran on September 12, 2006, and more than three years passed before defendant filed its motion for summary disposition. As a result, at the time defendant's motion for summary disposition was filed on October 9, 2009, plaintiff's claim was barred as a matter of law under MCR 2.116(C)(7) by the statute of limitations, and the trial court erred by denying defendant's motion for summary disposition.

Reversed. We do not retain jurisdiction.

O'CONNELL, P.J., concurred with K. F. KELLY, J.

RONAYNE KRAUSE, J. (*dissenting*). I respectfully dissent. The majority in this matter has very well-founded and appropriate concerns, both with regard to the ultimate merits of this case and with regard to the policy implications involved. I wholeheartedly agree that the trier of fact will require expert testimony in order to understand any judgment exercised by defendant in getting its ambulance from its assigned station to the scene of the decedent's collapse. But I cannot

comprehend how the majority concludes that the trier of fact will require expert *medical* testimony to do so.[1]

I agree with the majority's recitation of the test for whether a claim sounds in medical malpractice. There are two "defining characteristics" of medical-malpractice claims: the breach occurred within a "professional relationship" and "the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v Oakpointe Villa Nursing Ctr, Inc,* 471 Mich 411, 422; 684 NW2d 864 (2004). I take no issue with the majority's conclusion that a professional relationship existed here. Furthermore, I agree that this claim raises questions of *some* kind of "judgment beyond the realm of common knowledge and experience." As such, *some* kind of expert testimony certainly will be required.[2] I cannot glean from the pleadings or the record any support for the conclusion that this claim raises questions of *medical* judgment.

In *Bryant,* our Supreme Court discussed whether various of the plaintiff's claims sounded in medical

---

[1] Plaintiff will likely need expert medical testimony to show cause-in-fact, i.e., whether the decedent would have survived if she had received more prompt care. Medical responders were *already* on the scene well before defendant's ambulance arrived, so it is doubtful that plaintiff could do so. But under the present procedural posture of this case, that issue is not before us, and the gravamen of a medical-malpractice claim is the need for expert medical testimony to explain the allegedly breached standard of care, not causation. If, in fact, plaintiff attempts to introduce expert medical testimony for anything other than causation, the trial court should not allow this into evidence. But this matter is before us on a motion for summary disposition pursuant to MCR 2.116(C)(8), so we are required to believe what plaintiff argued below: that there would be no expert medical testimony because there is no need to exercise medical judgment in driving an ambulance carefully.

[2] It would therefore be a false dichotomy to suggest that this claim must require *either* medical judgment *or* lay knowledge.

malpractice or ordinary negligence; it found one claim completely unrecognized by Michigan law, two claims to sound in medical malpractice, and one claim to sound in ordinary negligence. The two medical-malpractice claims were found to sound in medical malpractice because training staff to evaluate a patient's risk of asphyxia and checking facilities for a risk of asphyxia required specialized and complex knowledge of the pros and cons that varied from person to person under various circumstances. *Bryant*, 471 Mich at 426-430. In contrast, the claim that was found to sound in ordinary negligence entailed the defendant's receiving definite information that a specific patient was actually at risk, whereupon the defendant literally did nothing at all about it; no professional judgment was necessary for the fact-finder to determine that the defendant should have done *something*. *Id.* at 430-432.

Here, I believe that it is well within the realm of common knowledge and experience that the response time to a cardiac arrest is critical. No professional judgment of any kind is needed to deduce that it was incumbent on defendant to get to the decedent as quickly as possible. What is *not* within the realm of common knowledge and experience is whether *it actually was possible* for defendant's ambulance to get to the decedent any faster. In the real world, there are a multitude of considerations facing the driver of an emergency vehicle. Are there, for example, automatic traffic-signal-changing devices in the locality? How quickly does other traffic on the road really yield to emergency vehicles? In the absence of expert testimony on the topic of safe and competent operation of heavy emergency vehicles, it would invite chaos to leave the trier of fact to speculate with regard to whether defendant's driver should have, for example, gone through a

red light or taken a corner faster.[3]

But those judgments facing defendant *were not medical in nature.*[4] It would already have been established, and indeed obvious, that defendant's driver needed to get to the destination as quickly as possible. The issue is whether defendant's driver *did* get the ambulance to the decedent as quickly as possible, and so any judgments he or she exercised in the process pertain to such issues as driving skills, proper use of whatever emergency-signaling or traffic-control devices the ambulance had available, and, to be sure, professional judgments regarding whether an ambulance could safely execute maneuvers under the weather or traffic conditions then facing it. While these judgments are outside the common knowledge of jurors, they are simply not medical in nature.

---

[3] Plaintiff asserts that defendant's tardiness "also violated the protocol, guidelines, and procedures dealing with dispatching and responding to emergency medical transportation calls," a reference to the provider agency standards issued by the Saginaw Valley Medical Control Authority. Such guidelines may be relevant to a determination of the applicable standard of care, although they do not per se establish it. See *Jilek v Stockson*, 289 Mich App 291, 306-310, 314; 796 NW2d 267 (2010). They *might* require a medical expert to interpret and explain them. But the only relevant portion of the provider agency standards here is that at least 90 percent of responses to life-threatening emergencies must be within 8 minutes and 59 seconds, which defendant satisfied. I see no reason why a lay juror would require expert medical testimony to understand this requirement or explain whether defendant acted reasonably in light of it.

[4] This is, of course, not to say that a claim involving the responsiveness of an ambulance operator to a reported medical emergency can never be a medical-malpractice claim. For example, if defendant had received multiple simultaneous emergency reports and had to decide the order in which to respond by evaluating the reports' comparative abilities to absorb a delay. Or if the ambulance crew were engaged in some other activity at the time of the dispatch—from purchasing coffee to actively treating another client—and had to decide whether they had time to finish before responding. In other words, there could certainly be situations in which an ambulance operator will need to exercise some kind of medical judgment. But none was alleged here.

According to the majority's reasoning, if a doctor who was on-call at a hospital chose to purchase a four-cylinder family car instead of an eight-cylinder sports-car or sport-utility vehicle, and was therefore not capable of getting from his or her home to the hospital as quickly or through the same road conditions in an emergency, the doctor's *decision to buy a particular model car* would potentially constitute medical malpractice. Likewise, an insurance company's delay in processing a claim, which can have serious consequences to an insured's ability to obtain medical care, could constitute medical malpractice. Alternatively, perhaps the majority intends to create a new legal rule that any matter involving an ambulance involves medical malpractice *per se*. Either way, I simply cannot agree that a decision that might have some ultimate medical consequences necessarily constitutes an exercise of actual medical judgment.

I would affirm.