# STATE OF MICHIGAN

# COURT OF APPEALS

CANDACE SAWICKI and DENNIS SAWICKI,

        Plaintiffs-Appellees,

v

ERIK KATZVINSKY and GARDEN CITY
HOSPITAL,

        Defendants-Appellants.

UNPUBLISHED
March 17, 2015

No. 318818
Wayne Circuit Court
LC No. 13-001984-NO

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendants appeal by leave granted an order denying their motion for summary disposition. We affirm in part, reverse in part, and remand for further proceedings.

This case arises from the injuries sustained by plaintiff Candace Sawicki[1] when she fell from a raised toilet seat at defendant Garden City Hospital ("the Hospital"). On October 25, 2012, plaintiff was resting in a hospital room on the premises of the Hospital after a knee replacement surgery. When she needed to use the restroom, defendant Erik Katzvinsky, a technical partner employed by the Hospital, assisted her into the bathroom. According to plaintiff, she yelled "Whoa!" as she sat down on the raised seat installed on the toilet because it was wobbly and unstable. Despite her exclamation, plaintiffs alleged that Katzvinsky left her alone in the bathroom even though he was aware of the hazard posed by the raised seat and aware of her risk of falling given her physical condition. Plaintiffs assert that she fell to the floor, and the raised seat fell off the toilet, when she leaned over to finish cleaning herself, sustaining a series of injuries.

After the incident, plaintiffs filed a complaint against defendants, which included claims of ordinary negligence and premises liability. In a motion for summary disposition, defendants asserted that plaintiffs' allegations were actually medical malpractice claims. The trial court

---

[1] Because plaintiff Dennis Sawicki only alleges a derivative claim of "additional tasks, expenses, and damages to the consortium relationship" based on plaintiff Candace Sawicki's injuries, we will refer to Candace, individually, as "plaintiff" in this opinion.

-1-

denied defendants' motion for summary disposition, concluding that plaintiffs' allegations were claims of ordinary negligence, not medical malpractice.

On appeal, defendants argue that the trial court improperly denied their motion for summary disposition because plaintiffs' allegations regarding the nursing assistance received after her surgery are claims of medical malpractice. We agree that the trial court erred in denying defendants' motion for summary disposition with regard to some of the claims in the complaint, but we disagree with regard to the rest of the claims in the complaint.

Defendants filed their motion for summary disposition pursuant to both MCR 2.116(C)(7) and (10). However, "[i]n determining whether the nature of a claim is ordinary negligence or medical malpractice . . . a court does so under MCR 2.116(C)(7)." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). This Court reviews de novo a trial court's decision on a motion for summary disposition, including a trial court's determination of whether a claim sounds in ordinary negligence or medical malpractice. *Id*. "In making a decision under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Id*.

"It is well established that [t]he gravamen of an action is determined by reading the claim as a whole and looking beyond the procedural labels to determine the exact nature of the claim." *David v Sternberg*, 272 Mich App 377, 381; 726 NW2d 89 (2006) (internal quotation marks and citations omitted). A plaintiff "cannot avoid the application of the procedural requirements of a malpractice action by couching [her] cause of action in terms of ordinary negligence." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43; 594 NW2d 455 (1999); see also *David*, 272 Mich App at 382 (stating same). There are two inquiries involved in determining whether a case involves medical malpractice or ordinary negligence claims. *Bryant*, 471 Mich at 420-422. The first inquiry is whether the action "is being brought against someone who, or an entity that, is capable of malpractice." *Id*. at 420. The second inquiry is "whether the alleged claim sounds in medical malpractice." *Id.* at 422. The Michigan Supreme Court has established a two-prong test for determining whether an allegation arises from medical malpractice or ordinary negligence: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Id*. If both prongs of the test are met, then "the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*.

It appears as though the first inquiry, whether the action is being brought against a person or entity that is capable of malpractice, is undisputed. See MCL 600.5838a.[2] Further, it appears

---

[2] The hospital is an entity capable of malpractice pursuant to MCL 600.5838a(1). Likewise, it is possible for plaintiffs' claims against Katzvinsky, a technical partner employed by the Hospital, to constitute medical malpractice claims because "this Court has held that, as contemplated by MCL 600.5838a(1), the negligent acts of unlicensed agents or employees of licensed health

that neither party disputes whether plaintiff's injuries occurred within a professional relationship. The parties concede that the incident occurred while plaintiff was admitted to the Hospital, which was presumably subject to a contractual duty to care for plaintiff during and after her knee surgery. Therefore, the issue on appeal primarily concerns whether plaintiffs' claims raise "questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. With regard to this prong of the *Bryant* test, the Supreme Court has explained the distinction between ordinary negligence claims and medical malpractice claims as follows:

> If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. [*Id.* at 423.]

Thus, if a claim raises questions that require medical expert testimony, then the claim is a medical malpractice claim. *Id*. at 423-424.

Applying the *Bryant* test to the allegations in plaintiffs' complaint indicates that some of plaintiffs' claims are within the common knowledge and experience of the jury while others raise questions of medical judgment. Count 1 of the complaint alleges ordinary negligence, and specifically that Katzvinsky breached the duty of ordinary care through four separate actions or inactions. We address each claim individually.

First, plaintiffs allege that Katzvinsky breached the duty of ordinary care "[b]y failing to take corrective action to rectify the known fall risk hazard that the unstable raised toilet seat presented for [p]laintiff." The parties dispute whether Katzvinsky heard plaintiff yell, "Whoa!" when she sat down on the raised toilet seat and whether Katzvinsky had knowledge of the instability and risk posed by the seat. Nevertheless, assuming that Katzvinsky did hear plaintiff yell or was otherwise aware of the hazard, plaintiffs' allegation asserts a theory of liability that "can be evaluated by lay jurors, on the basis of their common knowledge and experience." *Id*. at 423. Plaintiffs only assert that Katzvinsky was negligent when he failed to take *any* action after learning that the raised toilet seat was unstable or defective. See *id*. at 431 ("No expert testimony is necessary to show that the defendant acted negligently by failing to take any corrective action after learning of the problem."). Unlike plaintiffs' next allegation, this claim does not implicate, for example, whether it was medically prudent to allow plaintiff to sit on the raised toilet seat without supervision given her physical condition and known risk of falling. Accordingly, this claim does not involve medical judgment, nor does it require knowledge of the standards of care applicable to medical caregivers or knowledge of technical or scientific matters. Thus, the trial court properly held that plaintiffs' first claim in Count 1 sounded in ordinary negligence.

---

facilities may be subject to medical malpractice claims." *Kuznar v Raksha Corp*, 272 Mich App 130, 136; 724 NW2d 493 (2006).

Second, plaintiffs allege that Katzvinsky breached the duty of ordinary care by assuring plaintiff that she would " 'be ok', [sic] without exercising ordinary care in doing so." Although we are unsure of how one would exercise ordinary care in assuring an individual that the situation will be "ok," it seems that plaintiffs are asserting that Katzvinsky told plaintiff that everything would be alright and, despite his verbal reassurance, left her in the bathroom alone without addressing the purported hazard. Thus, it appears that plaintiffs' second claim is essentially the same as plaintiffs' third claim under Count 1, which alleges that Katzvinsky breached the duty of ordinary care "by failing to assist and abandoning [p]laintiff in the face of known dangers" even "[t]hough [p]laintiff was known to be at 'high risk' for falling," so we analyze these claims together. Plaintiffs identified the following "known dangers" under their third claim:

i. [T]he raised toilet seat's instability and Plaintiff's reactions thereto;

ii. Plaintiff's recent surgery, medications, weakness, unsteadiness, and her need for assistance;

iii. Plaintiff's "high risk" for falling with scores of "60" to "85" on the Morse Fall Scale;

iv. Posted notice of Plaintiff's "high risk" for falling; and,

v. Plaintiff's unstable seated position on the toilet, with feet elevated—left foot supporting right to protect her right knee from bending[.]

Plaintiffs contend that these allegations sound in ordinary negligence even though plaintiffs' counsel "may have taken the bait" based on the content of the defense witnesses' affidavits and extensively questioned Katzvinsky and Kathleen Iwinsky, the supervisor of the floor on which Katzvinsky was working, during their depositions regarding the nursing practices and procedures that were in place when plaintiff sustained her injuries. Nevertheless, the witnesses' answers to counsel's extensive questions regarding the manner in which the staff assessed plaintiff's physical condition and risk of falling, and the precautionary measures and devices that were in place, demonstrated that "a nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling." *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr,* 268 Mich App 484, 498; 708 NW2d 453 (2005). Likewise, the necessity of expert testimony remains apparent despite plaintiffs' assertion that her "existing medical condition is not the gravamen of her claim" and, instead, "merely a circumstance existing at the time of the ordinary negligence." In fact, plaintiffs' complaint specifically mentions her "recent surgery, medications, weakness, unsteadiness, and her need for assistance" as circumstances relevant to Katzvinsky's conduct, which are nearly identical to the circumstances identified by this Court in *Sturgis* that caused the question of whether the plaintiff's claims constituted ordinary negligence or medical malpractice in that case to "become[] entangled." *Id.*

Likewise, similar to this Court's observations in *Sturgis*, it may appear at first glance that medical judgment is not necessary to determine the types of precautions that Katzvinsky should

have taken to prevent injury to a patient recovering from knee replacement surgery while she used a raised toilet seat in the bathroom. However, the deposition testimony of Katzvinsky and Iwinsky and the affidavit of defendants' expert witness, Cecelia Janssen, R.N., reveal that "medical judgment beyond the realm of common knowledge" is involved in assessing a patient's risk of falling, assessing the amount of risk associated with a patient's use of a raised toilet seat, and assessing the level of supervision necessary for a patient in the bathroom, and that such judgment "would ultimately serve a role in resolving the allegations contained in [plaintiffs'] complaint." *Id.* For example, Katzvinsky described how he assessed plaintiff as he assisted her to the bedroom; Iwinsky explained the Morse Fall Scale—with which plaintiff's physical condition was measured—at length and stated that "general nursing policy is to allow a patient who is awake, alert, and oriented and following directions to be assisted to the toilet and advised to use the call light for assistance when they are finished"; and Janssen explained that "[t]he determination [of] whether to leave a patient alone in a bathroom is . . . a matter of nursing care and judgment."

Additionally, the Michigan Supreme Court has recognized that allegations involving issues of patient monitoring—such as questions regarding whether a defendant "exercised appropriate supervision in a 'special care unit' " or "whether a seizure patient requires constant medical attendance or restraints"—are issues involving professional medical judgment, which are "not issues of ordinary negligence" and, therefore, require expert testimony. *Dorris*, 460 Mich at 46-47 (citations omitted). Likewise, although plaintiffs assert on appeal that they did not raise issues regarding staffing decisions, patient monitoring, or professional management, it is apparent from the knowledge and judgment discussed in the depositions and affidavits that plaintiffs' allegations have, in fact, raised issues of patient monitoring and supervision. Therefore, the trial court erroneously concluded that plaintiffs' second and third claims against Katzvinsky in Count 1 sounded in ordinary negligence because the reasonableness of Katzvinsky's act of allowing plaintiff to remain in the bathroom without supervision "can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts[.]" *Bryant*, 471 Mich at 423.

Fourth, plaintiff alleges that Katzvinsky breached the duty of ordinary care "[b]y failing to seek additional assistance in lifting [p]laintiff from the bathroom floor when he knew that additional assistance would be required to avoid exacerbation of [p]laintiff's physical and emotional distress." This Court previously held that a plaintiff's claim involving the injuries that she sustained while nurses attempted to move her from a toilet to her wheelchair "was of medical malpractice because an ordinary layman lacks knowledge regarding the appropriate methods and techniques for transferring patients." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 490-491, 510; 668 NW2d 402 (2003). Likewise, as Janssen indicated in her affidavit, it was her expert opinion that "the decision to lift a patient found on the floor and to return the patient back into bed is a matter of nursing policy and practice and requires judgment based on a knowledge of nursing care." Accordingly, the trial court erroneously concluded that plaintiffs' fourth claim against Katzvinsky in Count 1, which involved Katzvinsky's movement of plaintiff, sounded in ordinary negligence because the reasonableness of his action "can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts[.]" *Bryant*, 471 Mich at 423.

Count 2 of plaintiffs' complaint alleges that the Hospital breached its duty to protect plaintiff, an invitee, "from unreasonable risks of injury that were known to the [Hospital], . . . that should have been known in the exercise of ordinary care," or that the Hospital "created and/or allowed to exist for an unreasonable period of time." The allegation is based on three components of the raised toilet seat that were broken or defective when plaintiff's injuries occurred: a "non-functioning securing bolt" in the armrest; "slick surfaced metal tab[s] on either side of the seat," which were missing "non-slip rubber sleeves"; and a missing or removed "front securing clamp." Plaintiffs' allegation is essentially a premises liability claim arising from plaintiff's status as an invitee, which the jury could evaluate using their common knowledge and experience, and not an allegation related to the medical judgment of defendants. *Bryant*, 471 Mich at 423; see also *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) ("With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect."). Likewise, especially because raised toilet seats and similar devices are found outside of hospitals or medical clinics, "[t]he fact-finder can rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges," as determining whether a toilet seat was missing a part does not require expert medical knowledge or knowledge regarding the applicable standard of care in the medical field. *Bryant*, 471 Mich at 430-431. Thus, the trial court properly found that plaintiffs' claim under Count 2 sounded in ordinary negligence.

Finally, plaintiff Dennis Sawicki's claim under Count 3 of the complaint alleges that "[a]s a direct and proximate result of the injuries to his spouse, [he] . . . sustained additional tasks, expenses, and damages to the consortium relationship." Because this claim is solely derivative of the other claims and some of plaintiffs' claims sound in ordinary negligence, it does not fully constitute a claim sounding in medical malpractice and will survive despite the existence of the medical malpractice claims. Accordingly, the trial court properly found that Count 3 sounded in ordinary negligence.

Because plaintiffs' second, third, and fourth claims under Count 1 were malpractice claims, plaintiffs were required to provide notice of intent to file those claims and wait the statutory period before filing their complaint. MCL 600.2912b(1); see also *Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 26-28; 809 NW2d 403 (2011) (stating same). Additionally, plaintiffs were required to file an affidavit of merit with the complaint. MCL 600.2912d(1); see also *Lockwood*, 293 Mich App at 26-28 (stating same). Because plaintiffs failed to comply with these procedural requirements before and at the time at which they filed the complaint, the trial court erred in denying defendants' motion for summary disposition with respect to those claims and failing to dismiss those claims without prejudice. *Dorris*, 460 Mich at 47-48; *Lockwood*, 293 Mich App at 26-27. Therefore, we reverse the trial court's order with respect to the second, third, and fourth allegations raised under Count 1 of the complaint and affirm the trial court's order with respect to the rest of the allegations.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, we decline to award costs pursuant to MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood