# STATE OF MICHIGAN

# COURT OF APPEALS

---

ANNE MCDONALD, Personal Representative of
the ESTATE OF GARY MCDONALD,

        Plaintiff-Appellee,

v

WEST BRANCH REGIONAL MEDICAL
CENTER,

        Defendant-Appellant,

and

JOHN TOLFREE HOSPITAL,

        Defendant.

UNPUBLISHED
March 29, 2018

No.'s    337173 & 338487
Ogemaw Circuit Court
LC No.  15-659591-NH

---

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

West Branch Regional Medical Center (hereafter "defendant")[1] appeals by leave granted the trial court's orders denying their motions for summary disposition. We reverse in Docket No. 337173 and affirm in Docket No. 338487.

## I. FACTS

On October 17, 2012, plaintiff, decedent's wife, took the decedent to defendant's facility for a scheduled chest x-ray. According to plaintiff's complaint, the decedent had "multiple comorbidities"[2] that required him to use a wheelchair. Plaintiff thus wheeled the decedent into

---

[1] John Tolfree Memorial Hospital was dismissed by stipulated order soon into the underlying lawsuit and takes no part in these appeals.

[2] Defined in *Merriam-Webster's Medical Dictionary* as "existing simultaneously with and usually independently of another medical condition." In other words, he had two more chronic diseases or conditions present at the same time.

-1-

the office and purportedly told hospital staff that the decedent was unable to stand on his own. Nevertheless, when decedent was taken into another room for the x-ray, one of the staff members allegedly told him to stand up and started to wheel the wheelchair away. According to the decedent, he collapsed to the ground and was subsequently found to have suffered a severe foot/ankle injury. He also started to have difficulty breathing later that day. The decedent was the only one who told plaintiff of the fall.

When plaintiff took the decedent to the emergency room the next day, he was diagnosed with a fractured ankle and a blood clot—specifically, deep vein thrombosis in the peroneal vein. Plaintiff initiated an action for negligence and medical malpractice against defendants shortly after the decedent passed away from an unrelated condition.

Defendant moved for summary disposition contending that plaintiff's sole named standard-of-care expert, Carrie Hanscom, did not meet the criteria as an expert witness in a medical malpractice action as set forth in MCL 600.2169. Having failed to provide the required standard of care expert, defendant contended that plaintiff failed to meet an essential element of her malpractice action and that dismissal was thus appropriate. Plaintiff, naturally, disagreed, and further responded that her action sounded in both medical malpractice and ordinary negligence such that, even if Hanscom's qualifications did not meet the statutory requirements, her negligence claim still survived summary disposition. The trial court denied defendant's motion. Defendant sought leave to appeal that ruling and we granted leave. *Estate of Gary McDonald v West Branch Regional Medical Center*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 337173).

Thereafter, defendant moved for summary disposition of plaintiff's ordinary negligence claim asserting that plaintiff's claim arises out of a professional relationship and the exercise of medical judgment, and is thus solely one of medical malpractice; not ordinary negligence. The trial court denied the motion, finding that questions of fact precluded summary disposition in defendant's favor. We granted defendant's application for leave to appeal that decision, *Estate of Gary McDonald v West Branch Regional Medical Center*, unpublished order of the Court of Appeals, entered August 28, 2017, (Docket No. 338487) and consolidated the appeals.

II.    DOCKET NO. 337173

On appeal, defendant argues that Hanscom neither devoted the majority of her professional time to the active clinical practice of radiology nor to the instruction of students in the year before the alleged malpractice. Thus, she does not meet the standard set forth in MCL 600.2169(1)(b) to testify as an expert witness in this medical malpractice case and the trial court abused its discretion in finding otherwise. We agree.

We review a trial court's decision on a motion for summary disposition de novo. *Gonzalez v St John Hosp & Med Ctr*, 275 Mich App 290, 294; 739 NW2d 392 (2007). Statutory interpretation is a question of law also calling for review de novo. *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the

-2-

party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

We review a trial court's ruling regarding the qualification of a proposed expert witness to testify for an abuse of discretion. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes. *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005).

To establish a medical malpractice action, a plaintiff must show the following elements: (1) the applicable standard of care; (2) the defendant's breach of the standard of care; (3) injuries; and (4) that the breach proximately caused the injuries. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012). Expert testimony is required to establish the standard of care and a breach of that standard. *Id*. With respect to expert testimony, MCL 600.2169 provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (ii) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

If a person does not meet all of the requirements of § 2169(1), that person cannot testify on the appropriate standard of care. *Woodard*, 476 Mich at 567. And, because expert testimony is necessary regarding the applicable standard of care in a medical malpractice case, without it, a plaintiff's claim of medical malpractice fails. See, e.g., *McElhaney ex rel McElhaney v Harper-Hutzel Hosp,* 269 Mich App 488, 497; 711 NW2d 795, 801 (2006) .

Here, the decedent was injured immediately prior to or in the process of having a chest x-ray taken. He was in the x-ray room and under the care of hospital personnel who were taking his x-ray when the injury occurred. Thus, plaintiff had to produce an expert radiology technician to testify as to the appropriate standard of care that was due to the decedent. Defendant does not dispute that plaintiff's proposed expert specialized in the same specialty as the party against whom or on whose behalf testimony would be offered concerning the occurrence that is the basis for the action. There is no allegation, then, that MCL 600.2169(1)(a) has not been met. In order to testify, however, plaintiff's expert must also meet the qualifications set forth in MCL 600.2169(1)(b).

Plaintiff attached the affidavit of meritorious claim of Carrie J. Hanscom, MBA, R.T. to her complaint. In the affidavit, Hanscom swore that during the time relevant to plaintiff's claim, she was certified as a radiology technologist and devoted a majority of her professional time for the preceding year to such practice. At her deposition, Hanscom testified that she is the director of operations for a freestanding imaging center based out of the University of Maryland Medical Center. She testified that in that position, she oversees the scheduling of all radiology on campus, the technologists, equipment purchases, procurements, and schedules. Hanscom testified that she spends approximately 2% of her time assisting in performing x-rays and the other 98% of her time in administrative work, and those percentages would be true since 2009. Hanscom last helped take an x-ray in early 2016 and had taken a "dozen or more" chest x-rays since 2012. According to Hanscom, she was program director for a radiology school from 2000 to 2005, but had not taught since 2005 or 2006. Because Hanscom unequivocally testified that she had not taught since 2005 or 2006, in order to testify as to standard of care, she must have:

> during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to . . . the active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.[MCL 600.2169(1)(b)(i)]

Defendant contends that engagement in administrative duties does not qualify as "active clinical practice" for purposes of MCL 600.2169(1)(b)(i), while plaintiff argues that the phrase does not have the limited meaning of being directly involved in patient care, as defendant would suggest. The phrase "active clinical practice" is not defined in MCL 600.2169 or its accompanying statutes. The only published case in Michigan, to date, that has addressed the meaning of this phrase is *Gay v Select Specialty Hosp*, 295 Mich App 284; 813 NW2d 354 (2012). In that nursing malpractice case, the issue for determination was whether the plaintiff's proposed nursing expert met the qualifications of MCL 600.2169(1) to testify as an expert. The proposed expert testified at deposition that she spent the majority of her time serving as an administrator. *Id*. at 293. The trial court found that the proposed expert was not actively engaged in a clinical practice during the relevant time period, nor was an instructor of students in an accredited professional school during that period so that she did not meet the statutory qualifications to testify concerning standard of care. *Id*. at 293-294.

This Court carefully reviewed the deposition testimony of the proposed expert and reversed. We noted that the proposed expert served as the director of education at a hospital and

that she testified that she oversaw education for all support staff, which included the nursing staff. *Id*. at 294. The proposed expert denied that her job was a desk job, though she admitted there was a lot of desk time, and testified that she did all of the orientations, did all of the CPR classes and continuing education, oriented new nurses to their units, and sat on a lot of committees. She testified that when orienting nurses, which was about 25% of her workload, she was actively involved in patient care. *Id*. at 295. This Court found that the trial court erroneously found that the proposed expert spent *no* time in the active clinical practice of nursing and that the trial court further erroneously found that the proposed expert was not directly involved in the care of patients when the statute imposed no such requirement. *Id*. at 295. Instead, the *Gay* Court found that the statute only required that a proposed expert spend the majority of his time in an "active clinical practice," which the Legislature did not define. The *Gay* Court stated:

> The ordinary meaning of "clinical practice" is the practice of one's profession in a clinical setting. See *Random House Webster's College Dictionary* (2d ed, 1997) (defining "clinical" to mean "pertaining to a clinic" or "concerned with or based on actual observation and treatment of disease in patients rather than experimentation or theory" and defining "practice" to mean "to pursue a profession, [especially] law or medicine"). Thus, in the case of a medical professional, in order to be engaged in an active clinical practice, the professional's practice must involve practice in a clinical setting, which usually means a setting where patients are treated. But this is not the equivalent of stating that the professional must directly interact with patients, which is what the trial court apparently understood when it disregarded Boggs's work overseeing the orientation of new nurses for the hospital. A medical professional can be involved in the treatment of patients in a variety of ways in a clinical setting without directly interacting with the patients. And the fact that many—if not most—nurses will physically interact with patients in the practice of their professions does not mean that a nurse who is indirectly involved in the care of patients is not engaged in the "active clinical practice" of nursing. Giving the phrase "active clinical practice" its ordinary meaning, the key question is whether Boggs was actively engaged in the profession of nursing in a clinical setting. [Id. at 295-296]

This Court further noted that "[i]n imposing professional-time requirements on expert witnesses, the Legislature intended to address a perceived problem with full-time professional witnesses who would ostensibly testify to whatever someone paid them to testify about." *Id*. at 296 (citation omitted).

> But the word "active" cannot be construed in this context to require that the professional physically interact with patients. Rather, the word "active" must be understood to mean that, as part of his or her normal professional practice at the relevant time, the professional was involved—directly or indirectly—in the care of patients in a clinical setting. [*Id*. at 297]

Employing the ordinary definition it assigned to the phrase "active clinical practice," the *Gay* court found that the prosed expert's testimony that she spent 25% of her time orienting

nurses, and 50% of her time teaching for an accredited residency program was sufficient to find that she spent more than 50% of her time in the active clinical practice of nursing or instructing nursing students and thus met the statutory requirement to provide expert testimony. *Id*. at 300-301.

Here, Hanscom testified that 98% of her time is spent in administrative work while 2% of her time is spent assisting in or performing x-rays. While this is not necessarily dispositive as to whether she spent the majority of her time in "the active clinical practice" of radiology technology, the rest of her testimony *is* dispositive on this issue. Hanscom testified concerning her job duties as follows: overseeing the scheduling of all radiology on campus, the technologists, equipment purchases, procurements, and schedules. Taking the *Gay* Court's definitions of "clinical" to mean "pertaining to a clinic" or "concerned with or based on actual observation and treatment of disease in patients rather than experimentation or theory" and "practice" to mean "to pursue a profession, [especially] law or medicine" (*Id*. at 295), we are satisfied that overseeing scheduling does not fall within the parameters of "active clinical practice." Overseeing the scheduling of radiology appointments is not concerned with the actual observation and treatment of disease in patients. Hanscom did not testify that she determines if patients require an x-ray and, in fact, testified that she only assists in performing x-rays 2% of her time. Overseeing the scheduling of x-rays is a purely administrative task to ensure that the business runs smoothly. So too, is equipment purchases, procurements, and schedules. Hanscom testified that she oversees the technologists, which could be concerned with or based on the actual observation and treatment of disease in patients, but Hanscom did not elaborate on what, specifically, she did to oversee the technologists or what percentage of her time was devoted to that task. Without any testimony or evidence as to whether she spent 48% or more of her time on overseeing technologists and, further, testimony or evidence indicating that this task was concerned with or based on the actual observation and treatment of disease in patients, plaintiff has failed to establish that Hanscom met the statutory requirements of MCL 600.2169(1). It is the proponent of expert testimony in a medical malpractice case who must satisfy the court that the expert is qualified under MCL 600.2169. *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016). Because plaintiff failed to provide an expert witness to testify as to standard of care, summary disposition in defendant's favor was appropriate.

III. DOCKET NO. 338487

Defendant argues that plaintiff's claim pertains to an action that occurred within the course of the decedent's professional relationship with defendant and it raised questions of medical judgment beyond common knowledge. According to defendant, her claim thus sounds strictly in medical malpractice, and there is no material question of fact allowing her ordinary negligence claim to stand.

"In determining whether the nature of a claim is ordinary negligence or medical malpractice, as well as whether such claim is barred because of the statute of limitations, a court does so under MCR 2.116(C)(7). We review such claims de novo." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864, 869-70 (2004). In reviewing a matter under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it. *Id*.

A medical malpractice case is distinguished from an ordinary negligence case by two characteristics. "First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment." *Bryant*, 471 Mich at 422 (internal citations and quotation marks omitted). "Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the fact-finder." *Id*. Thus, if a claim relates to an action that occurred within the course of a professional relationship and raises questions of medical judgment beyond common knowledge it is a medical malpractice action. *Id*.

A professional relationship exists when:

a licensed health care professional, licensed health care facility [or agency], or the agents or employees of a licensed health care facility [or agency], [are] subject to a contractual duty that require[s] that professional, that facility [or agency], or the agents or employees of that facility [or agency], to render professional health care services to the plaintiff. [*Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 23; 809 NW2d 403 (2011), quoting *Bryant*, 471 Mich at 422]

The *Bryant* Court cautioned that "[t]he fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may possibly sound in medical malpractice; it does not mean that the plaintiff's claim certainly sounds in medical malpractice." *Id*. at 421. Neither party in this case disputes the existence of a medical relationship.

The determination of whether medical judgment is involved depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 45-46; 594 NW2d 455 (1999).

If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. [*Bryant*, 471 Mich at 423]

In resolving whether claims alleged medical malpractice or ordinary negligence, we disregard the label applied to the claims. *Trowell v Providence Hosp & Med Centers, Inc*, 316 Mich App 680, 695–96; 893 NW2d 112 (2016). A party cannot avoid the application of procedural requirements associated with a medical malpractice action by labeling or describing the cause of action in terms of ordinary negligence. *Id*.

In her complaint, plaintiff alleged that she told staff at defendant's office that the decedent was unable to stand by himself. In her ordinary negligence clam, plaintiff asserted that the healthcare providers and staff involved in the care of the decedent were obliged to identify him as a fall risk, take all reasonable fall precautions, and provide him with appropriate assistance in ambulating. Plaintiff asserted that these defendants were careless, negligent and in breach of their obligations to identify a patient such as the decedent as a fall risk, take all

reasonable fall precautions, and provide the decedent with appropriate assistance with ambulating and, that as a result, they failed to timely and properly prevent the decedent from suffering a fall and incurring injuries. Several cases provide guidance on whether these allegations could sound in ordinary negligence.

In *Bryant*, a patient who was not in control of her motor skills was prone to sliding around became tangled in her bedding, despite the use of certain restraining devices. *Id*. at 415. Nurses on duty untangled the patient and advised that better methods of restraint needed to be used because the patient was at risk of asphyxiation in the bed sheets or bed. *Id*. at 416. The next day, the patient slid between the rails and bed and asphyxiated to her ultimate death. *Id*. at 417. This Court found that at least one of the plaintiff's allegations — that the defendant did not take steps to protect the decedent from asphyxiation when she had previously been discovered tangled in the bed sheets — was ordinary negligence. This Court opined that no expert testimony was necessary to determine whether defendants should have taken "*some* sort of corrective action to prevent future harm after learning of the hazard." *Id*. at 430–431 (emphasis in original). The fact-finder did not need expert testimony, but could "rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges." *Id*. at 431.

The physical movement or transfer of a patient by medical staff "may or may not implicate professional judgment." *Id*. at 421 n 9. "The court must examine the particular factual setting of the plaintiff's claim in order to determine whether the circumstances—for example, the medical condition of the plaintiff or the sophistication required to safely effect the move— implicate medical judgment . . . ." *Id*. For example, in *Trowell v Providence Hosp & Med Centers, Inc*, 316 Mich App 680, 697; 893 NW2d 112 (2016), this Court noted that "medical judgment, knowledge, and expertise could certainly play an integral role in determining whether one person or two persons should assist a patient in walking or moving." It also noted, "[h]owever, we can also envision a situation in which the determination regarding whether it was negligent to employ just one worker to assist a patient can be made by a jury on the basis of the jurors' common knowledge and experience." *Id*. at 698. In addition:

> We recognize that in certain cases it may be necessary to consider matters that implicate medical judgment in conjunction with matters that do not implicate medical judgment relative to evaluating whether negligence occurred in moving or handling a patient, which would effectively make the case a medical malpractice action. See *Sturgis Bank & Trust*, 268 Mich App at 497–498; 708 NW2d 453 (2005). However, in other cases, factors not requiring or implicating medical judgment may be fully sufficient in and of themselves to properly assess the reasonableness of conduct; such factors fall within the realm of common knowledge and experience. Absent documentary evidence and illumination from the complaint, we simply cannot ascertain whether the instant case is such a case or whether medical expertise and judgment must be contemplated relative to the question of the number of aides or nurses that should have been employed to safely assist plaintiff. The allegations in the complaint alone were inadequate to serve as a basis to summarily dismiss plaintiff's action, and plaintiff was not obligated to submit documentary evidence when the hospital chose not to do so in support of its motion for summary disposition. *Id*. at 698-699.

In *Gold v Sinai Hosp of Detroit, Inc*, 5 Mich App 368, 369; 146 NW2d 723 (1966), a patient sued a hospital for ordinary negligence when she fell from an examination table, incurring injuries. The patient warned the nurse who was assisting her onto an examination table that she was nauseated and dizzy and that she 'would not be able to make it.' The nurse assured the patient that she would brace her from behind but did not and when the patient moved, she fell. This Court found that the case was a question of ordinary negligence rather than malpractice. *Id*. at 370.

Accepting as true the allegations in plaintiff's complaint, the circumstances alleged to have attended the decedent's fall bear similarities to those described in *Bryant*. Plaintiff alleged, among other things, that defendant was obliged to provide the decedent with appropriate assistance in ambulating and that they were negligent in failing to do so. As in *Bryant*, the decedent's providers at the hospital were allegedly aware of his limitations that left him vulnerable to a risk of falling. A lay juror could observe that one who is unable to stand on his own may fall if told to stand on his own. Despite this knowledge, hospital personnel allegedly had the decedent stand unassisted. This decision was not a professional one; rather, it involved an ordinary action in surroundings that a layperson could readily understand. If proven, these facts require no expert explanation because lay jurors can evaluate the reasonableness of the allegedly negligent acts by employing their common knowledge and experience. If a patient arrives in a wheelchair and hospital staff is told that he is unable to stand unassisted, a lay juror has the experience and knowledge to determine whether the act of having the patient stand unassisted was reasonable. Thus, plaintiff set forth a claim for ordinary negligence and the trial court properly denied summary disposition in defendant's favor on this claim.

Reversed in Docket No. 337173 and affirmed in Docket No. 338487. We remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto