# STATE OF MICHIGAN

# COURT OF APPEALS

AUDREY TROWELL,

        Plaintiff-Appellant,

v

PROVIDENCE HOSPITAL AND MEDICAL
CENTERS, INC.,

        Defendant-Appellee.

FOR PUBLICATION
August 16, 2016
9:05 a.m.

No. 327525
Oakland Circuit Court
LC No. 2014-141798-NO

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

MURPHY, P.J.

Plaintiff Audrey Trowell appeals as of right the trial court's order granting summary disposition in favor of defendant Providence Hospital and Medical Centers, Inc. (the hospital), in this dispute that, at this juncture, concerns whether plaintiff's complaint sounded in medical malpractice or ordinary negligence. The substance of the case regards an incident in which a patient-care technician employed by the hospital allegedly "dropped" plaintiff twice while assisting and escorting her to the bathroom, resulting in various injuries. There is no dispute that plaintiff did not take the mandatory procedural steps associated with a medical malpractice action, such as serving a notice of intent, MCL 600.2912b, and procuring and filing an affidavit of merit, MCL 600.2912d. And the lawsuit was filed beyond the two-year statute of limitations generally applicable to medical malpractice actions, MCL 600.5838a(2); MCL 600.5805(1) and (6). Solely on the basis of the allegations in plaintiff's complaint, as there was no documentary evidence presented in regard to the hospital's motion for summary disposition, the trial court ruled that plaintiff's lawsuit sounded in medical malpractice and dismissed the action in its entirety. The trial court denied plaintiff's motions for reconsideration and to amend the complaint. Because the allegations in the complaint did not lend themselves to a definitive determination that the negligence claims in plaintiff's suit necessarily sounded in medical malpractice, we reverse and remand for further proceedings.

## I. BACKGROUND

On February 11, 2014, plaintiff filed a single-count complaint against the hospital in the Wayne Circuit Court; however, pursuant to a stipulated order, venue was transferred to the Oakland Circuit Court. In the complaint, under a count titled "Medical Negligence," plaintiff

-1-

alleged that on February 11, 2011, she was admitted to the hospital after having suffered a stroke caused by an aneurysm. Plaintiff asserted that she subsequently went into cardiac arrest and that she was placed in the hospital's intensive care unit (ICU). Plaintiff alleged in the complaint that she had been advised that two nurses needed to assist her whenever she went to the bathroom, yet "on several occasions" the hospital only employed one nurse to assist plaintiff to the bathroom. She additionally contended that on one particular occasion an unassisted female nurse[1] was tasked with helping plaintiff in going to and using the bathroom and that she "dropped" plaintiff, causing her to hit her head on a wheelchair. According to the complaint, when the nurse's aide attempted to assist plaintiff after dropping her, the aide "dropped [p]laintiff a second time." Plaintiff alleged that as a result of the falls, she suffered a torn rotator cuff, requiring multiple surgeries and treatment that was ongoing, as well as "bleeding on the brain."

Plaintiff alleged that the hospital had a duty to ensure that she "received proper assistance while a patient, including assistance ambulating to and from the bathroom while she was in the ICU." The complaint further set forth the following allegations:

15. Defendant hospital was negligent in one or more of the following particulars, departing from the standard of care in the community:

a. Failure to ensure the safety of Plaintiff while in Defendant's hospital;

b. Failure to properly supervise the care of Plaintiff while in Defendant's hospital;

c. Failure to provide an adequate number of nurses to assist Plaintiff while in Defendant's hospital;

d. Failure to properly train [the nurse's aide] and other[s] . . . in how to properly handle patients such as Plaintiff;

e. Failure to exercise proper care to prevent Plaintiff from being injured while in Defendant's hospital[.]

Plaintiff additionally alleged that the "hospital was negligent through its agents, employees, and staff in failing to ensure the safety of" plaintiff and that the negligence of the hospital "and its agents, employees and staff was the proximate [cause] of" plaintiff's alleged damages. In her prayer for relief, plaintiff sought a judgment awarding her economic damages for lost wages and earning capacity, noneconomic damages in the amount $2.5 million, and costs.

---

[1] It was later revealed that this employee was a patient-care technician, essentially a nurse's aide, and not a nurse. We shall refer to her for the remainder of this opinion as the "nurse's aide" or simply the "aide."

The hospital filed an answer to the complaint and affirmative defenses, indicating, in part, that plaintiff's suit was time-barred and that she had failed to serve a notice of intent and file an affidavit of merit as required in medical malpractice actions. Subsequently, the hospital filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (8), arguing that plaintiff's complaint sounded in medical malpractice and not ordinary negligence, that the suit was barred by the two-year statute of limitations applicable to medical malpractice actions, that plaintiff failed to serve a notice of intent, so there was no tolling of the limitations period, and that plaintiff failed to file an affidavit of merit. The hospital maintained that plaintiff's suit sounded in medical malpractice, considering that a professional relationship had existed between plaintiff and the hospital and that the alleged acts of negligence raised questions of medical judgment that were not within the common knowledge and experience of laypersons. The latter proposition forms the heart of this appeal.

In response to the hospital's motion for summary disposition, plaintiff contended that the issues concerning the two-year statute of limitations, a notice of intent, and an affidavit of merit were all irrelevant, given that plaintiff's "claim was not filed as a medical malpractice action." Plaintiff argued that medical expertise was not necessary "in order for a jury to decide whether a[n] [aide] dropping someone is negligence" and that a juror would be able to discern, absent medical testimony, that plaintiff had not been handled properly. Plaintiff further maintained that her suit and the alleged breach of duty did not entail the aide's administration of any medical care or treatment or the exercise of medical judgment, that the nurse's aide was simply assisting plaintiff in using the bathroom, that being dropped by an aide who was unassisted constituted clear negligence, and that the issue of the hospital's alleged failure to prevent plaintiff's injury could be answered without any specialized knowledge. Finally, plaintiff argued that summary disposition was premature because discovery had not yet been completed.[2]

---

[2] Pursuant to a second amended scheduling order, the discovery deadline was April 22, 2015, which was two weeks after the trial court granted the hospital's motion for summary disposition on April 8, 2015. The record reflects that the parties had served and answered some interrogatories and document-production requests. In February 2015, plaintiff served a deposition notice and subpoena duces tecum on the hospital designated for the nurse's aide. At this point, plaintiff did not know the aide's full name or address. The nurse's aide no longer worked for the hospital, and per order dated March 4, 2015, the trial court directed the hospital's attorney to provide plaintiff's counsel with the last known address of the nurse's aide. The address was provided, and plaintiff again served a deposition notice and subpoena duces tecum, with the deposition being scheduled for March 31, 2015. The hospital then filed a motion to quash the subpoena, challenging some of the document requests identified in the subpoena as having to be produced by the aide at her deposition. The trial court granted the motion on March 27, 2015, finding that the subpoena was "overbroad." Plaintiff then renewed her efforts by serving yet another deposition notice and subpoena duces tecum, setting a deposition date of April 9, 2015 – the day after summary disposition was entered in favor of the hospital. The hospital had also filed a motion to quash the most recent subpoena, which motion was never decided in light of the summary disposition ruling. In sum, a deposition of the nurse's aide was

After reviewing the factual and procedural history of the case and reciting the two-part test enunciated in *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 422; 684 NW2d 864 (2004),[3] which test is employed in determining whether a claim sounds in medical malpractice or ordinary negligence, the trial court ruled as follows at the hearing on the hospital's summary disposition motion:

> Here, there's no dispute that the professional relationship requirement is met. At issue is the second element. The [c]ourt finds that plaintiff's allegations sound in medical malpractice. Furthermore, allegations concerning staffing decisions and patient monitoring involve questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury. . . . Therefore, [the hospital's] motion for summary disposition is granted.

On April 8, 2015, an order was entered granting the hospital's motion for summary disposition for the reasons stated on the record. Plaintiff then filed a motion for reconsideration and to amend the complaint. On May 4, 2015, the trial court entered two orders. One order denied plaintiff's motion for reconsideration, with the trial court concluding that plaintiff had failed to demonstrate palpable error and was merely presenting the same issues that had been previously ruled on by the court. In the second order, the trial court indicated that plaintiff had failed to attach to her motion a proposed amended complaint, depriving the court of the opportunity to engage in meaningful review of her request for leave to file an amended complaint. The trial court directed plaintiff to refile her motion to amend with an attached proposed amended complaint. Plaintiff did so, and her proposed amended complaint again contained a single count, but it was retitled "Negligence." Plaintiff essentially repeated most of the allegations found in the original complaint. Paragraph 15 of the proposed amended complaint, which paragraph in the original complaint we quoted earlier, now simply asserted negligence on the part of the hospital for departing from the standard of care by failing to ensure plaintiff's safety while in the hospital, thereby retaining only subparagraph (a) from the original

---

never conducted. At the hearing on summary disposition, plaintiff's counsel acknowledged that she had pled multiple possible theories of negligence or liability, and she expressed that she had not yet settled on any particular theory where discovery was ongoing and the aide was scheduled to be deposed. Plaintiff's counsel explained, "They don't know if it was because two nurses were supposed to have assisted, whether the [aide] in question just wasn't able to physically assist her, [or] what the circumstances were that caused her to drop [plaintiff]."

[3] The *Bryant* Court explained that "a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. There is no dispute in this case that plaintiff's suit concerned an action that took place within the course of a professional relationship.

paragraph 15.[4] Plaintiff did repeat the earlier allegations that the "hospital was negligent through its agents, employees, and staff in failing to ensure the safety of" plaintiff and that the negligence of the hospital "and its agents, employees and staff was the proximate [cause] of" plaintiff's alleged damages.

On May 26, 2015, the trial court entered an order denying plaintiff's renewed motion to amend her complaint, ruling that the motion was "essentially a motion for reconsideration," which had already been denied, that the proposed amended complaint still sounded in medical malpractice, and that, therefore, any amendment would be futile. Plaintiff appeals as of right.

## II. ANALYSIS

### A. OVERVIEW OF APPELLATE ARGUMENTS

On appeal, plaintiff argues that her claims of failure to ensure safety, failure to exercise proper care, failure to train, failure to supervise, and failure to provide adequate staff all sounded in ordinary negligence and not medical malpractice. She further maintains that Michigan caselaw involving "dropped" or "fallen" patients in medical settings have all been held to sound in ordinary negligence. Plaintiff alternatively contends that even assuming some of her claims sounded in medical malpractice, there still remained viable claims of ordinary negligence. She also asserts that her claims implicated the doctrine of res ipsa loquitor. Finally, plaintiff argues that the trial court erred in denying her motion to amend the complaint.

The hospital argues that the trial court did not err in granting its motion for summary disposition and in denying plaintiff's motions for reconsideration and to amend the complaint. The hospital contends that medical knowledge and expertise were necessary to assess plaintiff's fall risk, that plaintiff did not allege a failure to take corrective steps, which was recognized in *Bryant* as a claim sounding in ordinary negligence, that staffing decisions require the exercise of medical judgment, that failure to ensure safety is not a viable, recognizable claim, and that the requirements for the application of res ipsa loquitor were not met. The hospital further maintains that plaintiff's proposed amended complaint also sounded in medical malpractice; therefore, the amendment would have been futile. Finally, the hospital argues that, given the inescapable conclusion that plaintiff's suit sounded entirely in medical malpractice, the suit was not properly commenced in accord with mandatory procedural steps and was also time-barred.

### B. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

---

[4] It appears that plaintiff deleted subparagraphs (b) through (e) on the basis that the hospital's motion for summary disposition, for whatever reason, omitted subparagraph (a) when referencing the complaint. However, the trial court's ruling granting summary disposition clearly encompassed all of plaintiff's claims.

"We review a trial court's ruling on a motion for reconsideration for an abuse of discretion." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). This Court likewise reviews for an abuse of discretion a trial court's ruling on a motion to amend a complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). In *Bryant*, 471 Mich at 419, our Supreme Court observed:

> In determining whether the nature of a claim is ordinary negligence or medical malpractice, as well as whether such claim is barred because of the statute of limitations, a court does so under MCR 2.116(C)(7). We review such claims de novo. In making a decision under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it. [Citations omitted.]

The hospital's motion for summary disposition cited both MCR 2.116(C)(7) and (8), and the hospital's argument focused solely on the allegations in the complaint; no documentary evidence was submitted by either party. The trial court did not identify the particular ground under MCR 2.116(C) that it relied upon in making its decision, but the court's ruling from the bench was couched in terms of plaintiff's "allegations." For purposes of MCR 2.116(C)(7), the hospital was permitted but not required to submit documentary evidence in support of its motion. MCR 2.116(G)(2) and (3); see *Whitmore v Charlevoix Co Rd Comm*, 490 Mich 964; 806 NW2d 307 (2011) (While a party may support a motion brought under MCR 2.116[C][7] with affidavits, depositions, admissions, or other documentary evidence, the movant is not required to do so, and the opposing party need not reply with supportive material.) In light of the proceedings below, our attention will be directed solely at the allegations in plaintiff's complaint, which we must accept as true.

## C. *BRYANT* AND OTHER PERTINENT CASELAW

In *Bryant*, the Michigan Supreme Court addressed four distinct claims of negligence brought against a nursing facility that arose out of a death from positional asphyxiation while the decedent was in the facility's care. The Court was "required . . . to determine whether each claim sound[ed] in medical malpractice or ordinary negligence." *Bryant*, 471 Mich at 414. Pertinent here, the *Bryant* Court stated:

> A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the fact-finder. Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these

-6-

questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

\* \* \*

After ascertaining that the professional relationship test is met, the next step is determining whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. . . . .

Contributing to an understanding of what constitutes a "medical judgment" is *Adkins v Annapolis Hosp*, 116 Mich App 558[, 564]; 323 NW2d 482 (1982), in which the Court of Appeals held:

"Medical malpractice has been defined as the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science. . . . ." [*Bryant*, 471 Mich at 422-424 (citations, quotation marks, ellipsis, and alteration brackets omitted).[5]]

The *Bryant* Court cautioned that "[t]he fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may *possibly* sound in medical malpractice; it does not mean that the plaintiff's claim *certainly* sounds in medical malpractice." *Id.* at 421.

---

[5] The *Bryant* Court also alluded to a preliminary issue concerning whether an action is being commenced "against someone who, or an entity that, is capable of malpractice." *Bryant*, 471 Mich at 420. The hospital, as an entity, is plainly capable of malpractice. See *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002) ("A hospital may be . . . directly liable for malpractice[.]"). And, to the extent that plaintiff's suit is based on the hospital's vicarious liability for the alleged negligence of the nurse's aide, see *id.* (a hospital can be held "vicariously liable for the negligence of its agents"), *Bryant* itself regarded, in part, claims associated with the conduct and training of certified nursing assistants, implicitly concluding that such employees are capable of malpractice, *Bryant*, 471 Mich at 420-421 and n 8, citing MCL 600.5838a. The parties did not address this issue below, nor do they on appeal, so we shall not explore the matter any further.

The physical movement or transfer of a patient by medical staff "may or may not implicate professional judgment." *Bryant*, 471 Mich at 421 n 9. "The court must examine the particular factual setting of the plaintiff's claim in order to determine whether the circumstances – for example, the medical condition of the plaintiff or the sophistication required to safely effect the move – implicate medical judgment . . . ." *Id.*[6] In *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 490-491; 668 NW2d 402 (2003), which opinion predated *Bryant,* the plaintiff sustained a laceration to her right leg when nurses attempted to move the plaintiff from a toilet to her wheelchair. This Court held that the "plaintiff's claim was of medical malpractice because an ordinary layman lacks knowledge regarding the appropriate methods and techniques for transferring patients." *Id.* at 510. In *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 497-498; 708 NW2d 453 (2005), a case involving an alleged closed-head injury resulting from a fall from a hospital bed, this Court, after reviewing *Bryant*, held:

> Here, plaintiff alleged in the complaint that defendant's nurses were negligent in failing to prevent Walling's fall, in permitting her to arise unassisted, in failing to protect her from falling, and in otherwise failing to exercise such measures when the nurses knew, or should have known, of Walling's risk of falling. The complaint also alleged that, at the time of the fall, Walling was lethargic, in pain, uncooperative, noncompliant, and had labored breathing. There was documentary evidence indicating that Walling was restless, somewhat disoriented, in pain, being medicated with morphine for pain, and instructed not to get out of bed.

---

[6] In *Gold v Sinai Hosp of Detroit, Inc*, 5 Mich App 368, 369-370; 146 NW2d 723 (1966), this Court, relying on *Fogel v Sinai Hosp of Detroit*, 2 Mich App 99; 138 NW2d 503 (1965) (case involving patient who fell and broke her hip while walking with the assistance of a nurse's aide after patient warned that one aide alone would not be capable of adequately assisting her in walking), ruled:

> In the instant case, the patient warned the nurse who was assisting her onto an examination table that she was nauseated and dizzy and that she "would not be able to make it." With the nurse's assurances that she would brace the plaintiff from behind, plaintiff endeavored to move from a sitting to a prone position. The promised assistance did not materialize and plaintiff fell, sustaining injuries, for which she sought to recover damages. This appeal followed the directed verdict for defendant below.

> Neither *Fogel* nor the instant case present a malpractice question but rather a question of ordinary negligence. Defendant attempted to distinguish the two cases on the theory that *Fogel* involved a nonprofessional nurse's aide, whereas the instant case involves a professional nurse. This is a distinction without a difference.

At the depositions of various nurses involved in Walling's treatment, plaintiff's counsel continually focused his questioning on risk assessment with respect to falling out of bed and the various factors taken into consideration when making an assessment, including the medications being prescribed to the patient and the patient's state of mind. It is clear from the deposition testimony that a nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling. While, at first glance, one might believe that medical judgment beyond the realm of common knowledge and experience is not necessary when considering Walling's troubled physical and mental state, the question becomes entangled in issues concerning Walling's medications, the nature and seriousness of the closed-head injury, the degree of disorientation, and the various methods at a nurse's disposal in confronting a situation where a patient is at risk of falling. The deposition testimony indicates that there are numerous ways in which to address the risk, including the use of bedrails, bed alarms, and restraints, all of which entail some degree of nursing or medical knowledge. Even in regard to bedrails, the evidence reflects that hospital bedrails are not quite as simple as bedrails one might find at home. In sum, we find that, although some matters within the ordinary negligence count might arguably be within the knowledge of a layperson, medical judgment beyond the realm of common knowledge and experience would ultimately serve a role in resolving the allegations contained in this complaint. Accordingly, we find that the trial court did not err in dismissing the ordinary negligence claim.

## D. DISCUSSION – APPLICATION OF LAW TO THE FACTS

As explained above, we are confined to examining the allegations in plaintiff's complaint. One of the difficulties in this case is that the complaint is fairly vague and lacks elaboration in terms of describing and factually supporting the particular theories of negligence set forth in the complaint, ostensibly because plaintiff was short on information concerning details of the incident and intended to rely on discovery to elicit specifics. It is unclear from the record regarding the nature, clarity, and extent of any memories that plaintiff herself has of the incident given her condition while in the ICU. The gravamen of a lawsuit is determined by reading the complaint as a whole and by looking beyond the labels attached by a party. *Kuznar v Raksha Corp*, 272 Mich App 130, 134; 724 NW2d 493 (2006). In resolving whether claims alleged medical malpractice or ordinary negligence, "we disregard the label . . . applied to the[] claims." *Id.*[7] A complaint cannot avoid the application of procedural requirements associated

---

[7] For this reason, we give little consideration to the fact that plaintiff's complaint referred to "medical" negligence. Further, although the complaint alluded to the hospital departing from "the standard of care in the community," negligence actions in general entail an alleged breach of the standard of care, not just medical malpractice suits. See *Moning v Alfono*, 400 Mich 425, 437, 442-449; 254 NW2d 759 (1977).

with a medical malpractice action by couching the cause of action in terms of ordinary negligence. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43; 594 NW2d 455 (1999).

A fair reading of the complaint reveals that plaintiff is alleging that the hospital is directly liable for negligence relative to training, supervision, staffing, monitoring, and oversight, as well as vicariously liable for the aide's negligence and the negligence of other employees possibly involved in plaintiff's care if it had a bearing on causation. With respect to an ordinary negligence action in an employment setting, an employer is generally subject to direct liability for its negligence in hiring, training, and supervising employees. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006) (case involving sexual assault by hospital employee). An employer can also be held vicariously liable for the wrongful acts of its employees that are committed while performing some duty within the scope of their employment. *Rogers v J B Hunt Transp, Inc*, 466 Mich 645, 651; 649 NW2d 23 (2002). Similarly, in the context of medical malpractice actions and as mentioned earlier, "[a] hospital may be 1) directly liable for malpractice, through claims of negligence in supervision[,] . . . selection[,] and retention of medical staff, or 2) vicariously liable for the negligence of its agents." *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002).

As best we can glean from plaintiff's complaint, the claims of direct and vicarious liability are ultimately predicated on a negligence theory pertaining to (1) the use of one nurse's aide to assist plaintiff and not two aides or nurses, and (2) the manner in which the nurse's aide physically handled plaintiff when providing assistance, regardless of the number of hospital personnel involved. Stated otherwise, plaintiff is alleging that the nurse's aide was negligent for attempting to assist plaintiff without help and/or for improperly handling plaintiff and that the hospital was negligent for training, supervision, staffing, monitoring, and oversight decisions tied to the number of aides or nurses needed, available, and employed to assist plaintiff and/or in regard to proper patient handling techniques when moving a patient. We must assess whether these liability claims sounded in medical malpractice or ordinary negligence.

1.  ONE VERSUS TWO AIDES OR NURSES

With respect to the claim of negligence pertaining to the number of aides or nurses used to assist plaintiff in accessing the ICU bathroom, medical judgment, knowledge, and expertise could certainly play an integral role in determining whether one person or two persons should assist a patient in walking or moving.[8] A patient's physical and mental state or condition, as impacted by illness, surgery, anesthesia, medications, and the like, may very well dictate the number of hospital employees needed to safely escort or move the patient from one location to another and require testimony from medical experts.

---

[8] Although plaintiff's complaint alleges that "she [presumably, plaintiff] had been advised that two nurses needed to assist Plaintiff to the bathroom," it does not elaborate on who provided that advice or the circumstances under which it was provided. The development of an evidentiary record in that regard conceivably may impact the analysis of whether the use of only one aide constituted, allegedly, medical malpractice or, alternatively, ordinary negligence.

However, we can also envision a situation in which the determination regarding whether it was negligent to employ just one worker to assist a patient can be made by a jury on the basis of the jurors' common knowledge and experience. For example, if the weight differential between the nurse's aide at issue here and plaintiff was significant, or if the nurse's aide had some type of handicap or a recent injury bearing on her ability to provide assistance, a layperson, absent expert medical testimony, might be able to easily and properly evaluate the reasonableness of the decision not to seek a second aide or nurse to assist in moving or escorting plaintiff. By way of a somewhat extreme yet pertinent and plausible hypothetical, if an aide weighed 90 pounds soaking wet and a patient weighed 500 pounds, a layperson would be capable of assessing, on the basis of common knowledge and experience, whether it was negligent for the aide to attempt moving or handling the patient without help.

We recognize that in certain cases it may be necessary to consider matters that implicate medical judgment *in conjunction with matters that do not implicate medical judgment* relative to evaluating whether negligence occurred in moving or handling a patient, which would effectively make the case a medical malpractice action. See *Sturgis Bank & Trust*, 268 Mich App at 497-498.[9] But, in certain cases, factors not requiring or implicating medical judgment may be fully sufficient in and of themselves to properly assess the reasonableness of conduct, falling within the realm of common knowledge and experience. Absent documentary evidence and illumination from the complaint, we simply cannot ascertain whether the instant case is such a case or whether medical expertise and judgment must be contemplated relative to the question of the number of aides or nurses that should have been employed to safely assist plaintiff. The allegations in the complaint alone were inadequate to serve as a basis to summarily dismiss plaintiff's action, and plaintiff was not obligated to submit documentary evidence where the hospital chose not to do so in support of its motion for summary disposition. *Whitmore*, 490 Mich at 964.[10]

---

[9] One of the features that distinguishes *Sturgis Bank & Trust* from the instant case is that here we only have the allegations in the complaint to guide our analysis, where in *Sturgis Bank & Trust* the panel extensively discussed the documentary evidence in resolving whether the suit sounded in medical malpractice or ordinary negligence. *Sturgis Bank & Trust*, 268 Mich App at 497-498.

[10] We do wish to make clear that simply because a patient's physical or mental condition may be relevant to assessing the level of assistance needed, it does not necessarily mean that medical judgment is implicated, as laypersons, relying on common knowledge or experience, may be able to grasp uncomplicated or straightforward medical conditions. See *Bryant*, 471 Mich at 421 n 9 ("The court must examine the particular factual setting of the plaintiff's claim in order to determine whether the circumstances – for example, the medical condition of the plaintiff or the sophistication required to safely effect the move – implicate medical judgment . . . ."). This proposition applies equally to our discussion below regarding patient-handling techniques.

## 2. ALLEGED NEGLIGENCE IN PHYSICALLY HANDLING PLAINTIFF IRRESPECTIVE OF THE NUMBER OF AIDES OR NURSES EMPLOYED

Comparable to our preceding discussion, medical judgment and experience may or may not be necessary to evaluate whether the nurse's aide was negligent as to the manner in which she physically assisted plaintiff, regardless of the allegation that the aide should have sought help from another aide or nurse. Medical judgment, knowledge, and expertise could certainly be pertinent in determining the proper technique to use when holding and escorting a patient. A patient's physical and mental state or condition, as impacted by illness, surgery, anesthesia, medications, and the like, may very well dictate how a patient should be physically handled when being moved. However, in any given case and on the basis of common knowledge and experience, lay jurors could evaluate whether negligence was involved in assisting a patient if the nature of the assistance was so plainly unreasonable that evidence of medical judgment and knowledge was simply rendered immaterial. For example, accepting as true, as we must do, the allegation that the nurse's aide dropped plaintiff, if evidence was developed showing that the aide dropped her because the aide decided to answer a cell phone call or because the aide held plaintiff with an extremely and ridiculously loose grip, a jury could likely evaluate the reasonableness of the aide's act without resort to medical judgment, utilizing common knowledge and experience. Again, we recognize that in certain cases it may be necessary to examine matters that implicate medical judgment in conjunction with matters that do not implicate medical judgment relative to evaluating whether negligence occurred in handling a patient. But we cannot determine solely from the allegations in plaintiff's complaint whether this case falls into that category, implicating medical judgment, or whether medical judgment is simply not relevant in assessing whether the nurse's aide acted reasonably.[11]

---

[11] To the extent that the issue arises following remand, plaintiff's argument regarding the doctrine of res ipsa loquitur (the thing speaks for itself) is misplaced and lacks merit. We initially note that she did not allege the application of the doctrine in her complaint, nor was the doctrine argued in connection with the hospital's motion for summary disposition. Accordingly, the argument was unpreserved for purposes of appeal and need not be reviewed. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Nevertheless, we shall briefly address the issue. The doctrine of res ipsa loquitur, which, when applicable, creates an inference of negligence on the basis of circumstantial evidence, requires a showing that the incident was of a kind that ordinarily does not occur in the absence of negligence. *Woodard v Custer*, 473 Mich 1, 6-7; 702 NW2d 522 (2005). We cannot conclude that this case presents such a scenario. Regardless, while a medical malpractice case may proceed to a jury absent expert testimony if the requirements of the doctrine of res ipsa loquitur are satisfied, *id.* at 6, the case nevertheless remains a medical malpractice action subject to the applicable statute of limitations for medical malpractice suits, as well as to the "notice of intent" and "affidavit of merit" requirements. The doctrine does not convert or transform a medical malpractice action into an ordinary negligence suit.

## 3.  THE SECOND "DROPPING"

Even if medical judgment was implicated with respect to the allegation that the nurse's aide dropped plaintiff the first time, the alleged subsequent or second "dropping" requires some additional thought.  When medical personnel have knowledge of a particular hazard confronting a patient and no corrective action is taken to reduce the risk presented, a claim of failure to take steps or respond generally sounds in ordinary negligence.  *Bryant*, 471 Mich at 430-431.  The *Bryant* Court observed:

> Suppose, for example, that two CENAs [nursing assistants] employed by defendant discovered that a resident had slid underwater while taking a bath. Realizing that the resident might drown, the CENAs lift him above the water. They recognize that the resident's medical condition is such that he is likely to slide underwater again and, accordingly, they notify a supervising nurse of the problem. The nurse, then, does nothing at all to rectify the problem, and the resident drowns while taking a bath the next day.
>
> If a party alleges in a lawsuit that the nursing home was negligent in allowing the decedent to take a bath under conditions known to be hazardous, the [legal] standard would dictate that the claim sounds in ordinary negligence. No expert testimony is necessary to show that the defendant acted negligently by failing to take any corrective action after learning of the problem. A fact-finder relying only on common knowledge and experience can readily determine whether the defendant's response was sufficient.  [*Id.* at 431.]

By analogy, and accepting the complaint's allegations as true, after plaintiff was dropped the first time and hit her head on a wheelchair, it is possible that lay jurors, on the basis of common knowledge and experience and absent consideration of medical judgment, could readily determine that it was unreasonable for the nurse's aide to simply and immediately continue her effort to get plaintiff to the bathroom without seeking help from other hospital personnel. Although we are not ruling out the possibility that medical judgment was implicated with regard to the second dropping, given the complete lack of documentary evidence, if the trial court eventually returns to the issue of whether plaintiff's action sounded in medical malpractice or ordinary negligence, the court must keep in mind that the first and second "droppings" may be distinguishable under *Bryant*.

## III.  CONCLUSION

We cannot conclude solely on the basis of the allegations in the complaint, which is all that can be considered given the procedural posture of the case, that plaintiff's claims sounded in medical malpractice.  Accordingly, the trial court erred in summarily dismissing plaintiff's lawsuit.  Further factual development is required to properly ascertain whether plaintiff's claims sounded in medical malpractice or ordinary negligence, and perhaps the suit presents a mix of

such claims.  Testimony by the nurse's aide would appear to be a key factor in answering the question.[12]

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Having fully prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.


/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra

---

[12] With respect to plaintiff's argument challenging the denial of her motion to amend the complaint, under MCR 2.118, leave to amend a pleading must be freely given when justice so demands, and a motion to amend should ordinarily be granted unless there exists undue delay, bad faith or a dilatory motive, repeated failures to cure deficiencies with prior amendments, undue and actual prejudice, or futility. *Weymers v Khera*, 454 Mich 639, 658-659; 563 NW2d 647 (1997).  In light of our ruling, we need not reach this issue.  We do note, however, that had the original complaint failed, the proposed amended complaint would likely have been futile, given that it essentially mimicked the original complaint, but with *fewer* allegations or claims of negligence.