# STATE OF MICHIGAN

# COURT OF APPEALS

EUGENE ROGERS and JEANETTE CAMPBELL
ROGERS,

Plaintiffs-Appellants,

UNPUBLISHED
July 20, 2017

v

No. 332117
Oakland Circuit Court
LC No. 2015-146159-NO

ST. JOSEPH MERCY HEALTH SYSTEMS,
doing business as ST. JOSEPH MERCY
HOSPITAL-OAKLAND,

Defendant-Appellee.

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Plaintiffs, Eugene Rogers and Jeanette Campbell Rogers, appeal as of right the trial court's order granting summary disposition in favor of defendant St. Joseph Mercy Health Systems (the hospital).[1] Plaintiffs pursued this lawsuit as an ordinary negligence case and not as an action for medical malpractice, foregoing the service of a notice of intent, MCL 600.2912b, and the filing of an affidavit of merit, MCL 600.2912d, as required in medical malpractice suits. The trial court concluded that plaintiffs' claims entailed matters involving the exercise of medical judgment within the context of a professional relationship; therefore, the action sounded in medical malpractice, necessitating summary dismissal. We affirm.

Rogers, himself a physician, was admitted as a patient at the hospital on March 28, 2013. On the evening of that date, while in his hospital room, Rogers claimed that he pushed the call button "a number of times," seeking ambulatory assistance to use the bathroom. According to Rogers' testimony, after 30 minutes without a response, he attempted to walk to the bathroom by himself and fell, suffering injuries to his head, back, and right arm and shoulder. A rapid response team at the hospital documented the incident and the injuries. Rogers asserted that several hours later he again pushed the call button for help to use the bathroom, waiting

---

[1] Jeanette Rogers' claim, alleging loss of consortium, is derivative of her husband Eugene Rogers' action for injuries that he suffered at the hospital. We shall refer to Mr. and Mrs. Rogers collectively as "plaintiffs," while Eugene Rogers will be referred to as "Rogers."

-1-

approximately 45 minutes without a response before he again attempted to walk to the bathroom. He then fell for the second time, suffering injuries comparable to those sustained in the first fall, with an intensification of the pain being experienced in his right shoulder.

There was deposition testimony by a registered nurse who was on duty when Rogers fell for the second time, and she indicated that situations can arise in which multiple patients are using their respective call buttons at the same time. In those circumstances, according to the nurse, the staff is forced to prioritize which patient to attend to first, implicating nursing judgment, although she could not recall any patient ever having to wait 30 or more minutes for a response to an activated call button.

Plaintiffs filed a negligence action against the hospital, absent the preliminary service of a notice of intent and the filing of an affidavit of merit. See MCL 600.2912b and MCL 600.2912d. The complaint alleged one count of negligence and one count of loss of consortium. With respect to the negligence claim, plaintiffs alleged that the hospital, through its employees, staff, and agents, breached the duty of care owed to Rogers by: (1) negligently failing to regularly monitor and supervise Rogers' needs: (2) negligently failing to regularly monitor the patient call system; (3) negligently failing to respond when Rogers used the call system; (4) negligently and recklessly permitting Rogers to fall twice on the same day; and (5) negligently violating Rogers' rights as a hospital patient. The trial court subsequently granted the hospital's motion for summary disposition, concluding that there existed a professional relationship between the hospital and Rogers at the time of his treatment, which is undisputed, and that plaintiffs' action involved questions of medical judgment beyond the realm of common knowledge and experience, which matter is disputed. Plaintiffs appeal by right the court's ruling.

We review de novo a trial court's ruling on a motion for summary disposition, and the determination whether the nature of a claim is ordinary negligence or medical malpractice implicates MCR 2.116(C)(7) and is also subject to de novo review. *Trowell v Providence Hosp & Med Ctrs, Inc*, 316 Mich App 680, 689-690; 893 NW2d 112 (2016). "In making a decision under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 419; 684 NW2d 864 (2004). In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court, in regard to MCR 2.116(C)(7), stated:

> This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

In *Bryant,* our Supreme Court addressed multiple claims of negligence brought against a nursing facility, arising out of a death from positional asphyxiation, and the Court was called upon to determine whether each claim sounded in ordinary negligence or medical malpractice. *Bryant*, 471 Mich at 414. The *Bryant* Court set forth the applicable analytical framework, observing:

A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the fact-finder. Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

\* \* \*

After ascertaining that the professional relationship test is met, the next step is determining whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved . . . . [*Id.* at 422-423 (citations, quotation marks, and alteration brackets omitted).]

The gravamen of an action is determined by reading a complaint as a whole, looking beyond the labels affixed by a party. *Trowell*, 316 Mich App at 695. And in resolving whether a claim sounds in medical malpractice or ordinary negligence, we disregard the label placed on the claim by a party. *Id.* "A complaint cannot avoid the application of procedural requirements associated with a medical malpractice action by couching the cause of action in terms of ordinary negligence." *Id.* at 695-696 (citation omitted).

In this case, plaintiffs concede that Rogers' injuries occurred within the course of a professional relationship with the hospital. In addition, it is undisputed that plaintiffs failed to comply with the applicable procedural requirements for a medical malpractice action, MCL 600.2912b; MCL 600.2912d, before the general two-year period of limitations for medical malpractice actions expired, MCL 600.5838a(2); MCL 600.5805(1) and (6). The dispute that needs to be resolved is whether plaintiffs' claims raise questions of medical judgment requiring expert testimony or, on the other hand, whether the claims concern facts within the realm of a jury's common knowledge and experience. More specifically, the issue presented regards whether the reasonableness of the response, or lack thereof, by the hospital's nursing or medical staff to the activated call button implicated matters of medical judgment.

"The fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may *possibly* sound in medical malpractice; it does not mean that the plaintiff's claim *certainly* sounds in medical malpractice." *Bryant*, 471 Mich at 421; see also *Trowell*, 316 Mich App at 692-

693. "[A]llegations concerning staffing decisions and patient monitoring involve questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 47; 594 NW2d 455 (1999). And in *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 498; 708 NW2d 453 (2005), this Court stated:

> It is clear from the deposition testimony that a nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling. While, at first glance, one might believe that medical judgment beyond the realm of common knowledge and experience is not necessary when considering [the patient's] troubled physical and mental state, the question becomes entangled in issues concerning [her] medications, the nature and seriousness of the closed-head injury, the degree of disorientation, and the various methods at a nurse's disposal in confronting a situation where a patient is at risk of falling.

A bit of the difficulty in analyzing this case is that there is no evidence specifically indicating *why* hospital personnel did not respond to Rogers' room after he repeatedly pressed the call button preceding the two falls, assuming that he actually did so.[2]

In *Trowell*, 316 Mich App at 699-700, a case involving a claim that a nurse's aide twice dropped the plaintiff while assisting her in walking to a hospital bathroom and where the allegations in the plaintiff's complaint were all that could be considered because no documentary evidence was submitted for purposes of summary disposition, this Court stated:

> [M]edical judgment and experience may or may not be necessary to evaluate whether the nurse's aide was negligent as to the manner in which she physically assisted plaintiff, regardless of the allegation that the aide should have sought help from another aide or nurse. Medical judgment, knowledge, and expertise could certainly be pertinent in determining the proper technique to use when holding and escorting a patient. A patient's physical and mental state or condition, as affected by illness, surgery, anesthesia, medications, and the like, may very well dictate how a patient should be physically handled when being moved. However, in any given case and on the basis of common knowledge and experience, lay jurors could evaluate whether negligence was involved in assisting a patient if the nature of the assistance was so plainly unreasonable that evidence of medical judgment and knowledge was simply rendered immaterial. For example, accepting as true, as we must do, the allegation that the nurse's aide dropped plaintiff, if evidence was developed showing that the aide dropped her because the aide decided to answer a cell phone call or because the aide held plaintiff with an extremely and ridiculously loose grip, a jury could likely utilize common knowledge and experience to evaluate the reasonableness of the aide's

---

[2] Viewing the evidence in a light most favorable to plaintiffs, we shall proceed on the basis that Rogers used the call button as testified to at his deposition.

-4-

act without having to resort to medical judgment. . . . [W]e recognize that in certain cases it may be necessary to examine matters that implicate medical judgment in conjunction with matters that do not implicate medical judgment relative to evaluating whether negligence occurred in handling a patient. But we cannot determine solely from the allegations in plaintiff's complaint whether this case falls into that category, thereby implicating medical judgment, or whether medical judgment is simply not relevant in assessing whether the nurse's aide acted reasonably.

The principle that emanates from *Trowell* is that, when determining whether the reasonableness of an action can be evaluated absent contemplation of medical judgment, a court must explore the nature of the action and the reason or reasons explaining why the action occurred in the first place. Thus, in *Trowell*, this Court focused its attention on the range of possibilities, as only slightly limited by the broad allegations in the complaint (no documentary evidence), with respect to why the plaintiff was dropped by the nurse's aide, as the different factual possibilities that might explain the aide's actions, i.e., dropping the plaintiff twice, would have a bearing on the question whether medical judgment was implicated. Here, the action at issue is the failure to respond to Rogers' use of the call button when he had to use the bathroom. To the extent that hospital personnel failed to respond because of staffing level decisions, patient monitoring criteria, risk assessments, or patient prioritization determinations, the caselaw makes clear that these matters typically concern and involve questions of medical judgment. *Bryant*, 471 Mich at 426-427; *Dorris*, 460 Mich at 47; *Sturgis Bank*, 268 Mich App at 498; *Trowell*, 316 Mich App at 697.

The instant case is in a different procedural posture than *Trowell*, as the hospital submitted documentary evidence in support of its motion for summary disposition. Plaintiffs submitted documentary evidence in response, but the evidence did not suggest or indicate that the failure to respond to the call button was unassociated with the exercise of professional medical judgment. For example, plaintiffs did not present documentary evidence from which it could reasonably be inferred that there was a technical problem with the call button, e.g., a battery or electrical failure, or that hospital staff just decided to ignore Rogers' calls, despite being able to respond, which matters would not generally implicate questions of medical judgment. As such, and again assuming that Rogers actually utilized the call button as claimed, plaintiffs have not established a triable factual issue regarding whether the failure to respond to the call button was anything more than negligence connected to staffing levels, patient monitoring, risk assessment, or priority determinations that involved medical judgment. Although the discovery deadline had not yet elapsed when the hospital filed its motion for summary disposition, plaintiffs make no claim that they were in need of further discovery or that summary disposition was premature in light of the discovery deadline. In sum, reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, the hospital is awarded taxable costs pursuant to MCR 7.219.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell